## No. 12,246.

### CITY AND COUNTY OF DENVER v. JONES.

Decided February 4, 1929.

Mr. THOMAS H. GIBSON, Mr. WAYNE A. GUNKLE, for plaintiff in error.

Mr. HORATIO S. RAMSEY, for defendant in error.

*Department Two.*

MR. JUSTICE MOORE delivered the opinion of the court.

PARTIES are referred to as in the lower court.

Plaintiff, Mary E. Jones, judgment creditor of the defendant R. C. Morris, an employe of the garnishee, the City and County of Denver, attacks the validity of two assignments of wages made by defendant to one Feder on the ground that they violate section 5110 of Compiled Laws of 1921, which reads as follows: "5110. * * * Sec. 11. All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, or real property, made in trust for the use of the person making the same, shall be void, as against the creditors existing of such person."

It appears from the record that after the service of garnishment process, the garnishee paid the money here involved to the assignee Feder.

The lower court held that the assignments in question violated the above-quoted section and were therefore inoperative as against Mary E. Jones, judgment creditor of the assignor. Judgment was accordingly rendered against the garnishee for $140, to reverse which this writ is now prosecuted.

The testimony clearly discloses that the assignments in question were made primarily for the benefit of the assignor and certain of his creditors.

The applicability of the statute to the transactions herein involved depends upon the definition of the expression "things in action." The record discloses that the assignor was in the employ of the garnishee as a fireman and that the assignments in question were assignments of wages to be earned under such contract of employment. The question then arises, are the said assignments of wages to be earned "things in action" within the contemplation of the statute above quoted? Apparently the lower court and counsel assumed that said assignments came within the purview of the statute and were in fact "things in action," because the record and briefs are silent on this point. We are of the opinion, after an exhaustive examination of text books and cases, that an assignment of wages to be earned under a contract existing at the date of the assignment is a chose in action, is included in the expression "things in action" and therefore comes within the statutory inhibition.

A chose in action is defined to be: "A right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected with contract, but which cannot be enforced without action." Bouvier's Law Dictionary, Third Revision, 483.

A "chose in action" is "a personal right not reduced into possession, but recoverable by a suit at law. *St. Louis & S. F. R. Co. v. Crews,* 151 Pac. 879, 882; 51 Okla.

144, Ann. Cas. 1918C, 823." 2 Words and Phrases, Third Series, 37; 22 R. C. L. p. 66, and cases cited.

"Under the rule that a mere expectancy or possibility is not assignable at law, an assignment of future wages is invalid where there is no contract of employment in existence at the time, and the wages are those to be earned under engagements which are to be entered into subsequently. Such a transfer is an attempt to assign that which has no existence either actually or potentially, there being no foundation or contract on which an indebtedness may arise. (citing cases.) On the other hand, if a person is under an actual contract of employment his future earnings amount to a possibility coupled with an interest, and the right to receive them, though liable to be defeated, is vested, and this being the case he may assign them." (citing cases) 2 R. C. L. 603, Par. 12.

In the case of *Manly v. Bitzer,* 91 Ky. 596, 13 Ky. Law Rep. 166, 16 S. W. 464, 34 Am. St. Rep. 242, a policeman in the employ of the city of Louisville assigned wages to be earned. The court there held that such an assignment was valid. This case quotes Pomeroy as follows: "When a party has entered into a contract or arrangement, by the ordinary and legitimate and natural operation of which he will acquire property, his existing right thereunder is not a mere naked hope; it is a possibility of acquiring property, coupled with a legal interest, in the contract." Pomeroy's Eq. Juris. § 1286.

Also Judge Story in his Equity Jurisprudence, § 1040 is quoted: "If there be an existing or subsisting contract, then a right exists out of which that which is assigned may be derived, and as it may reasonably be anticipated as the outcome, it may be transferred for value and vest the right to it in the assignee. There is in such a case a potential existence of that which is assigned."

Further: "It was not the assignment of a mere naked possibility, coupled with no interest. There was an expectation of wages under an employment entered upon under a subsisting contract. Whatever Manly might,

therefore, earn had a potential existence, because the wages would be the expected and natural product of his existing contract right. It made no difference whether they were fixed at so much by the day, or week, or month. Whatever he might earn upon the first day of the month was not so independent of what he might earn during the remainder of the month that he could not assign the entire month's wages. Whatever may be said as to the right in equity to assign mere possible interests, however much the authorities may differ as to the extent of the power, yet here was a reasonable expectation of means founded upon an existing right; a subsisting contract; an existing employment; and in such a case the transferee for value undoubtedly acquired an equity. A right was in esse under which it could reasonably be expected the party would become entitled to what was transferred.

"There was ground for a reasonable expectation of means based upon an existing right; it was as if the seed of a crop had been sown, and constituted a subject for a valid contract."

See also *Metcalf v. Kincaid,* 87 Iowa, 443, 54 N. W. 867, 43 Am. St. Rep. 391, and note *Skipper v. Stokes,* 42 Ala. 255, 94 Am. Dec. 646.

"A chose in action does not require a present right of action. Thus a note payable on time is a chose in action as soon as it is made. So a note payable in work is assignable as a chose in action, though the performance of the work has not been demanded. Haskell v. Blair, 57 Mass. (3 Cush.) 534, 536." 2 Words and Phrases, 1147.

Applying the doctrine enunciated in the above cases, it is clearly discernible that wages to be earned under an existing contract can be assigned; that such an assignment is a chose in action and comes within the purview of the statute here invoked and, under circumstances disclosed by the record, is voidable at the option of the creditor not benefited thereby. The lower court was therefore correct in holding that the statute had been violated and that as against the judgment creditor Mary E. Jones, the assignments were valueless.

The city contends that it cannot be held liable to garnishor unless liable to defendant and, having paid out the amount sought to be garnished to defendant's assignee after service of garnishment process, it is not now liable to defendant.

In support of this contention it cites the case of *State v. Elkins,* 84 Colo. 409, 270 Pac. 875, and *Denver, etc., R. R. Co. v. Smeeton,* 2 Colo. App. 126. The doctrine announced in these two cases is not applicable to the instant case for the reason that in neither was the question of the invalidity of the assignment raised because of the violation of the statute above quoted.

In the case of *Denver v. Smeeton,* the rule that a company accepting an assignment is thereafter only liable to the assignee is limited to those cases wherein, "The transaction infringes no established legal principle."

In *State v. Elkins, supra,* the court announces the rule, "The general rule is that a garnishee is liable only when the defendant or judgment debtor might have maintained an action against such garnishee," but recognizes an exception thereto (citing *Jones v. Langhorne,* 19 Colo. 206, 34 Pac. 997): "As said in *Jones v. Langhorne, supra,* there is an exception in the case of fraudulent transfer of property, but the principle upon which the exception is based has no application to this case. The facts as stipulated contain no claim of fraud on the part of any one."

The instant case comes within the exception noted in *Denver v. Smeeton, supra.*

Here the money garnisheed was paid out by the city after service of garnishment summons. Such payment was made at the risk of the city because, after the service of garnishment process, the money was in custodia legis and the garnishee thereafter became a mere stakeholder of the same, retaining possession thereof until the determination of the garnishment proceeding. See 28 C. J. p. 259, §§ 357, 358 and cases there cited.

Judgment affirmed.

Mr. Chief Justice Whitford, Mr. Justice Butler and Mr. Justice Burke concur.